## DUNN, ET AL. *v.* THE UNIVERSITY OF OREGON.

### STATE UNIVERSITY A CORPORATION.

The board of directors of the University of Oregon, created by the act of October 19, 1872, of the legislature, entitled "An Act to create, organize and locate the University of the State of Oregon," is a corporation.

### SUIT AGAINST THE STATE.

The immunity of a state from being sued applies only to its being made a party to the record.

This immunity of the state does not extend to its agents, who hold the title and possession of property against which a valid claim exists in favor of a third party.

APPEAL from Lane.

This suit was brought by respondents in the circuit court for Lane county, to set aside a conveyance of real property situated in said county, from the Union University Association to the said board of directors of the University of Oregon, executed on or about Dec. 31, 1873, upon the ground of fraud, and to subject such property to the payment of certain judgments, which had been recovered in said court by respondents against said association.

The complaint alleges the due incorporation of the Union University Association as a private corporation under the laws of Oregon, and the creation of the board of directors of the University of Oregon by act of the legislature, approved October 19, 1872, subsequently changed to the "Regents of the University," by act of the legislature of October 21, 1876. It also shows that in the year 1873, and prior to the conveyance sought to be impeached, the Union University Association became indebted to the respondents severally in large amounts which have never been paid. That at the time said indebtedness accrued, and prior thereto, said association was the owner in fee simple of certain real property in Eugene City, in said county, worth fifty thousand dollars, and gives a description of it by metes and bounds. That said real

estate was all the property owned by said association, and that by conveying it to the board of directors of the University of Oregon, it made itself insolvent, and thereupon became and has ever since remained wholly unable to pay its debts. That such conveyance was executed in fraud of the rights of the respondents, and for the purpose of hindering and delaying them in collecting their said debts, and that there was no consideration therefor, and these facts were fully within the knowledge of said board of directors when they received said conveyance.

Prior to instituting this suit the respondents severally duly recovered judgments against the Union University Association, upon their said claims, in said circuit court, and caused them to be duly docketed in said county, and executions to be issued and placed in the hands of the sheriff for service, which were duly returned by him wholly unsatisfied. The dates of recovery and amounts are as follows: Excelsior Lime Company, November 9, 1876, $1,056; F. B. Dunn and the administrators of the estate of Charles Bowker, deceased, April 24, 1879, $2,475; F. B. Dunn, April, 24, 1879, $782.63.

Respondents pray for a decree setting aside said conveyance and that said property be sold to satisfy said judgments.

The board of regents demurred, and the court below overruled the demurrer, and upon their failing to answer, rendered a decree for respondents as prayed for in their complaint. From this decree the board of regents have brought this appeal.

This court, however, on motion to dismiss the appeal, held the service of the notice insufficient as to all the respondents except F. B. Dunn, and dismissed the appeal as to the others, but retained it as to the separate judgment of F. B. Dunn.

*Thompson & Bean, J. J. Walton and R. S. Strahan,* for appellant.

The board of regents of the university not being a corpor-

ation cannot be sued.   (Session laws, 1872, page 47; session laws, 1876, 52 and 53.)

They are agents of the state and part of the state government.   (42 Iowa, 335.)

The location of the university under the act was a valuable consideration for the property, and the state would take it discharged of any latent equities existing between any previous parties.

The board of regents having no interest in the property, hold it in trust for the state.   The state being the real party in interest, must be sued or join in the suit.   (Civil Code, page 110.)

The legislature has no power to create any corporation " except for municipal purposes."   (Const. of Oregon, article 11, section 2.)   The state is not suable without its consent first given by some statute.   (43 N. Y., 399; 7 Neb., 108; 16 Wallace, 317; 52 Ala., 2; 40 Iowa, 236; 6 Cal., 256; 39 N. J. L., 49.)

*Kelsay & Burnett,* for respondents.

The directors of the University of Oregon constitute a corporation.   (Session laws, 1872, page 47.)   The name of the board was changed by the legislature to " The Regents of the University."   (Session laws, 1876, page 54.)

The grandest test of a corporation is the mode in which property succeeds from one to another.   When it does not go to the heirs of the holder as a natural person, it passes to the successors, because it is holden in a corporate capacity.   (2 Wend., 102; 1 Blackstone, 123; Angell and Ames on Corporations, 110; 22 Am. R., 673; 42, Vt., 99; U. S. Digest, 1877, 148. )

The conveyance was a gift, and was prejudicial to creditors, and the defendant, the university, can be compelled to account. (7 Wallace, 411; 5 Oregon, 259.)

By the Court, WATSON, J.:

That the state university itself was incorporated under the

provisions of the act of October 19, 1872, entitled " An act to create, organize and locate the University of the State of Oregon," is not claimed; but that the " board of directors " created by that act was an incorporated body, can hardly be denied.   Section 2, declares:   " The general government and superintendence of the university shall vest in a board of directors, to be denominated the board of directors of the University of Oregon," to consist of nine members, all of whom shall be citizens and permanent residents of the state of Oregon."

Section 4 provides:   " The board of directors shall have the custody of the books, records, buildings, and all other property of the university.   All lands, moneys, bonds, securities and other property which shall be donated, transferred or conveyed to the said board of directors by gift, devise, or otherwise, for the use and benefit of the university, shall be taken, received, held and managed, invested and reinvested, sold, transferred, and in all respects managed, and the proceeds thereof used, bestowed and invested in the manner, for the purpose and under the terms and conditions respectively prescribed by the act of gift, devise, or other act, in the respective cases.   They shall have power, and it shall be their duty, to enact by-laws for the government of the university; to elect a president of the university, and the requisite number of professors, instructors and employes, and to fix their salaries and the term of office of each, and to do all other acts necessary and proper to carry out the design of this act."

Sections 11 and 12 provide, that on or before January 1, 1874, " The Union University Association of Eugene City, Oregon, shall secure a site for said university at or in the vicinity of Eugene City, and erect thereon and furnish a building for the use of the state university, on a plan to be approved, and after the erection of the same, to be accepted by the board of commissioners for the sale and management of the school and university lands, and for the investment of the funds arising therefrom; said building and furniture to be

of not less value than fifty thousand dollars; and to convey the said site and building, in fee simple, free from all incumbrances, to said board of directors, on or before said January 1, 1874."

By an amendatory act, passed October 16, 1874, the time was extended to January 1, 1877, for securing such site and building and conveying them to the board of directors.

While it cannot be denied that some of these powers might be exercised by a board of directors in their collective capacity, without being incorporated, it is equally undeniable that some of them could not. The capacity and power to take conveyances of lands and hold and dispose of them for the use and benefit of the university, according to the various and diverse trusts imposed upon them by their donors, and to transmit title to lands to their successors in office in perpetual succession, without intermediate conveyances, could not belong to this board of directors unless incorporated.

It is true the legislature has not declared it to be a corporation in express terms, but this was not essential. (Angell and Ames on Corporations, section 76; *Thomas* v. *Dakin*, 22 Wend., 70, 103, 106.)

" It is, indeed, a principle of law which has been often acted on, that where rights, privileges and powers are granted by law to an association of persons by a collective name, and there is no mode by which such rights can be enjoyed, or such powers exercised, without acting in a corporate capacity, such associations are, by implication, a corporation, so far as to enable them to exercise the rights and powers granted." (Angell and Ames on Corporations, sec. 78.)

But it is contended by appellants that whether incorporated or not, the board of directors are mere agents or officers of the state, and hold the property in controversy in trust for the state, the real party in interest. Hence they infer that the board of directors are shielded by the immunity from suit which belongs to the state. But this is an error. The im-

23

munity of the principal in such a case does not extend to the agent.

It matters not if the state is the real party in interest, provided the legal title and possession are in the agent, so that it is not necessary to make the state a party on the record. *Osborn* v. *The Bank of the United States,* 9 Wheat., 738; *Michigan State Bank* v. *Hastings,* 1 Douglas, [Mich. R.,] 225; *Garr* v. *Bright,* 1 Paige Ch., 157.)

An agent of the state, whether incorporated or not, by virtue of his character simply, possesses no such immunity from being sued. He must show in his defense to an action or suit for interfering with private rights, that he proceeded within the authority conferred by a valid law, or his defense must fail.

We think these propositions are clearly established by the authorities cited, and in our view of the questions presented by the transcript, they are decisive in the case before us.

It is not necessary to decide whether the board of directors, under the act of October 19, 1872, is a public or private corporation. The decision in either case must be the same.

The plaintiffs allege the facts showing that they were prior *bona fide* creditors, and have reduced their claims to judgments against the Union University Association, a private corporation, docketed them and issued executions, which have been returned wholly unsatisfied, and that the conveyance to the board of directors was not only voluntary, but made with intent to defraud them out of their just demands, and that the board of directors had full knowledge of such purpose. Upon the demurrer the facts stand confessed.

They had a plain right to the remedy they resorted to, and the decree was entirely proper. The decree of the court below is affirmed with costs.

Decree affirmed.