Argued March 19; reversed September 23, 1930

# UNITED CONTRACTING CO. ET AL. *v.* DUBY ET AL.

## (292 P. 309)

*J. M. Devers* of Salem (I. H. Van Winkle and J. W. DeSouza, both of Salem, on the briefs) for appellant.

*Homer D. Angell* of Portland (Omar C. Spencer of Portland on the briefs) for respondents.

ROSSMAN, J. This is a suit to impeach a final award made by the state highway engineer and approved by the state highway commission for work done by the plaintiffs pursuant to a contract between the United Contracting company, which is one of the plaintiffs, and the state of Oregon, on the ground that the engineer committed such gross errors when he made his computations that the principles of law applied in the case of *Mayer v. East Side Logging Co.*, 130 Or. 341 (278 P. 957, 280 P. 343), and the authorities therein reviewed, render his award a nullity. The plaintiffs further pray that after the court has impeached the engineer's award that it determine the amount due them for the work performed. The state has paid to the plaintiffs $63,607.80; the engineer's final estimate showed that the plaintiffs had earned $66,029.60 and that hence there was a balance due them of $2,421.80. The complaint alleges that the balance should be $56,157.29.

The state highway commission consists of three members appointed by the governor, who serve without compensation: Or. L., § 4428. Those three officials are the defendants in this suit. The legislature has

delegated to them authority "* * * over all matters pertaining to construction of state highways letting of contracts therefor and the selection of materials * * *": Or. L., § 4432. Our statutes (§ 4435) further provide: "All contracts executed for the improvement of state highways shall be made in the name of the state of Oregon and executed by the commission." The highway legislation empowers the commission to appoint a state highway engineer: Or. L., § 4430; also "to enter into such contracts, appoint such officials, and do any other act or things necessary to fully meet the requirements" of the legislation: Or. L., § 4491. The state highway funds are in the custody of the state treasurer and are expended by him under the jurisdiction of the commission: Or. L., § 4489. The sources of the highway fund are several: Or. L., § 4487; they consist in part of a state tax, the proceeds of the sales of the state bonds, revenue derived by the state from the licensing of motor vehicles and chauffeurs, taxes upon gasoline, etc. The contract between the state and the construction company does not stipulate the precise sum payable for the work to be performed but specifies in detail the clearing to be done, the excavations to be made, the culvert pipe to be laid, the hauling to be performed, etc., and recites the amounts to be paid per unit for the different classes of the above-mentioned work. It provides that at the conclusion of the work the highway engineer shall make a "final estimate" setting forth the quantities of the various classes of work performed, and that upon its approval by the highway commission the state shall pay to the contractor the entire sum found due. The contract out of which this suit arose bears the signature of the United Contracting company and

of the state of Oregon as the contracting parties. Its opening paragraph recites:

"This agreement made and entered in, in quadruplicate this 28th day of May, 1924, by and between the state of Oregon, hereinafter called the state, by the State Highway Commission of said state, party of the first part, and the United Contracting company * * * Witnesseth, that the said contractor, in consideration of the sum to be paid to him by said state * * *."

The above language and the manner in which the instrument is signed is authorized by Or. L., § 4435, previously quoted. The United Contracting company assigned the contract to the other two plaintiffs who constitute a partnership and who performed the work. When the undertaking had been completed the highway engineer made his final estimate and subsequently it was approved by the commission. The plaintiffs, however, refused to accept the amount awarded and charged that the estimate was incorrect. When the commission refused to yield, the complaint, which prays for a decree impeaching the final estimate and determining the amount due to the contractors, was filed. This pleading does not aver that the state gave its consent to the institution of the suit and thereupon the defendants filed a demurrer which is predicated in part on the contention that in the absence of such an allegation the suit cannot be maintained. When the demurrer was overruled the defendants filed an answer, which in addition to challenging the merits of the plaintiffs' claim also alleged that when the defendants transacted this piece of business they did not do so in their individual capacity but as officers of the state. At the conclusion of the presentation of the evidence the defendants moved for a dismissal upon

the ground that the suit was in effect against the state and that since it had not granted its consent the proceeding must be dismissed; this motion was denied. The evidence satisfied the circuit court that the engineer's final estimate was based upon gross errors; it thereupon set aside his award and granted to the plaintiffs a substantially larger sum. From this decree the defendants appealed.

The defendants assail the decree of the circuit court in two particulars: (a) that this is in effect a suit against the state brought without its consent, and (b) that the facts do not warrant an impeachment of the final estimate of the engineer which had received the approval of the commission. If the first of these two contentions is sound it will be unnecessary for us to express ourselves upon the latter. We shall, therefore, ignore the demurrer and assume that the evidence warrants a finding that when the engineer made his final estimate he was misled by gross errors. There is no contention that the defendants were aware of these errors or were actuated by any improper purposes. The engineer is not a party to this cause.

It may be well at the outset to determine the nature of this suit. As previously stated the relief sought is twofold in nature: (1) a decree holding invalid and nugatory the award made by the highway engineer, and (2) upon the grant of that relief a judgment for $56,157.29 as the balance due to the plaintiffs (the engineer's award was only $2,421.80). The contract invested the engineer with the powers of an umpire in determining his award. We quote from the contract thus:

"It is mutually agreed between the parties to the contract that to prevent all disputes and misunderstandings between them in relation to any of the pro-

visions contained in these specifications, or their performance by either of said parties, the engineer shall be an umpire to decide all matters arising or growing out of said contract between them.

"The engineer shall determine the amount of quantity of the work which is to be paid for under this contract, and decide all questions which may arise relative to the fulfillment of these specifications, and his estimates and decisions shall be final and conclusive and binding upon both parties to the contract.  *  *  *

"As soon as practicable after the completion and acceptance of the work under this contract, there shall be prepared by the engineer a final estimate of the quantities of the various classes of work performed, and after the approval of such final estimate by the state highway commission, the state shall pay to the contractor the entire sum found to be due, after deducting all previous payments and all amounts to be retained or deducted under the provisions of this contract."

■ The foregoing being the authority which the parties conferred upon the engineer it follows that his final estimate concluded both the state and the contractor unless the engineer was guilty of the wrongful conduct upon which the plaintiffs rely, that is gross errors in calculating quantities. Our most recent consideration of the rule which lends finality to an arbitrator's award and the circumstances which warrant its impeachment is *Mayer v. East Side Logging Co.,* supra. The trial judge's memorandum opinion, after setting forth a careful summary of the evidence, concludes thus: "* * * the court is satisfied that there is error in the final estimate of materials moved of sufficient magnitude to require a revision of the estimate." Gross error and not fraud is the wrong upon which the plaintiffs rely. Since we assume that the circuit court's finding is waranted by the evidence the

only question which remains is whether the plaintiffs have brought before the court the proper parties defendant. It is evident that in a suit of this character the defendants should be the real parties in interest: 5 C. J., p. 198, § 505. The defendants insist that the state is the real party in interest and that in its absence the court cannot set aside the engineer's award and assess the sum owing. The plaintiffs contend for the opposite conclusions. The essence of the plaintiffs' position is stated in the following language taken from their brief:

"They only seek by this suit to compel the highway commission to perform a plain, official duty which they have agreed to perform under the contract. The contract provides that the highway engineer shall act as an umpire and ascertain the material moved and the work done by the plaintiffs under the contract and make an award accordingly and that the highway commission will approve such an award."

Thus it is evident that according to the plaintiffs' theory (1) this is not a suit against the state, but against an agency of the state, (2) that it may be maintained, and (3) that in this suit against a state agency relief may be granted which will render nugatory an arbitrator's award decreeing that the state owes the plaintiffs only $2,421.80 and substitute in its stead a judgment for $56,157.29. And since the plaintiffs do not contend that the state is a party defendant, or a necessary party, it is unnecessary to determine whether under the circumstances it can be said that the state has impliedly given its consent to be sued.

■ Since the defendants contend that this is in effect a suit against the state it may be well at the outset to notice the rule, well established in this jurisdiction, that the state cannot be sued in its own courts without

its consent. Section 24, article IV, Constitution of Oregon, provides: "Provision may be made by general law for bringing suit against the state, as to all liabilities originating after or existing at the time of the adoption of this constitution; * * *" Before the commencement of this suit the legislature had not granted the state's consent to the institution of suits of this character. Since that time it has enacted 1929 Session Laws, chapter 227, which provides in part:

"A suit or action may be maintained * * * against the state of Oregon by and through and in the name of its state highway commission upon a contract made * * * by such commission, after the passage of this act."

The plaintiffs believe that this suit may be maintained by virtue of Or. L., § 362. It follows:

"An action at law may be maintained by and against any public officer in this state in his official character, when, as to such cause of action, such officer does not represent any of the public corporations mentioned or described in section 357, for any of the causes specified in such section and section 300 (358). If judgment be given against any such officer in such action, it may be enforced against him personally, and the amount thereof shall be allowed to him in his official accounts."

The above section of our code came into our laws as § 350 of the enactments of 1862. In the intervening years no amendments have been made to it. However, the words "section 300" (Or. L.) are section 147, Laws of 1862. This section prescribes the manner in which the sheriff is authorized to attach real and personal property; manifestly it has no application to the causes of action which the author of § 350, Laws of 1862, intended could be prosecuted by and against public officers. The compiler of our code has inserted in

brackets after the words "and section 300" a reference . to § 358. The latter was § 347, Laws of 1862. It follows:

"An action may be maintained against any of the organized counties of this state upon a contract made by such county in its corporate character, and within the scope of its authority, and not otherwise; and an action may be maintained against any of the other public corporations in this state mentioned in section 357, in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation."

Or. L., § 357, provides as follows:

"An action at law may be maintained by any county, incorporated town, school district, or other public corporation of like character in this state, in its corporate name, and upon a cause of action accruing to it in its corporate character, and not otherwise, in either of the following cases:—1. Upon a contract made with such public corporation; 2. Upon a liability prescribed by law in favor of such public corporation; 3. To recover a penalty or forfeiture given to such public corporation; 4. To recover damages for an injury to the corporate rights or property of such public corporation."

Or. L., § 362, is the only enactment of our legislature upon which the plaintiffs rely as authority for the maintenance of this suit.

■ As previously stated the plaintiffs contend that in a suit wherein the state is absent but its agency is a party the relief prayed for by them may be granted. All funds disbursed upon the orders of the highway commission are public funds in the possession of the state treasurer. The plaintiffs frankly concede that they propose to collect the remuneration allowed them by the circuit court's decree out of the state treasury

and not from the personal resources of the highway commissioners. It is evident, therefore, that the decree, if sustained, will expend itself against the state and not against the officials. The work performed by the defendants consisted of the building of a section of the state highways and other work directly incidental thereto. The obligation to pay for the work performed is that of the state and is not the debt of the officials. But the plaintiffs argue that while it is true the results of the suit will affect the state its specific purpose is to compel the defendants "to perform a plain, official duty, which they have agreed to perform under the contract," and that its effect upon the state is merely coincidental. They concede that this suit could not be maintained against the state but insist that the sovereign's immunity is not available to an agency of the state in a suit against it predicated upon its alleged failure to perform a duty exacted by a public statute or by a contract executed by the state and the plaintiff.

In support of the above contentions the plaintiffs cite a large number of cases; since most of them have been reviewed in the decisions of other courts (see for instance *Hampton v. State Board of Education*, 90 Fla. 88 (105 So. 323, 42 A. L. R. 1456) or in the text books (see Cooley's Const. Lim., (8th Ed), p. 22, note 1) we shall confine our review to the Oregon cases and to those upon which the plaintiffs especially rely. In support of a contention that the immunity of the state is not available when its agency is the party defendant the plaintiffs cite *Dunn v. State University*, 9 Or. 357, and *Butterfield v. State Industrial Accident Commission*, 111 Or. 149 (223 P. 941, 226 P. 216). It is true that in the Dunn case the decision states: "The immunity of the principal in such a case does not extend

to the agent''; however, the entire context renders it clear that the words ''in such a case'' refer to the suit then before the court which was a proceeding based upon charges of fraud to set aside a conveyance of real property which had been made to the University of Oregon. It is well established that one who alleges himself to be the owner of real property may maintain a suit to recover it from an agency of the state which is in possession or has accepted a deed in its own name. See *Salem Mills Co. v. Lord,* 42 Or. 82 (69 P. 1033, 70 P. 832); *Weyler v. Gibson,* 110 Md. 636 (73 Atl. 261, 17 Ann. Cas. 731); note 108 Am. St. Rep. 838, and 36 Cyc. 918. In the Butterfield case the following language appears: ''This immunity does not obtain when an agency of the state is a party.'' That case was a proceeding in which the parties were an injured workman and the state industrial accident commission; the court had made an award in the workman's favor. The industrial accident commission prosecuted no appeal, but the attorney general served a notice stating that ''the state of Oregon, as trustee of the accident fund, hereby appeals.'' In dismissing, upon the motion of the workman, this attempted appeal this court pointed out that the industrial accident commission is a corporation vested with express power to sue and to be sued and that it administers funds derived almost exclusively from employers and employees. In other words, the judgment of the circuit court was payable out of funds of which the state was custodian, but possibly not owner; the funds had been gathered not for the general enrichment of the state but for the benefit of injured contributing employees. The extract from the decision which we have quoted is somewhat similar to a test announced by Chief Jus-

tice Marshall for the purpose of determining whether the state is actually a party defendant. In *Osborn v. Bank of United States,* 9 Wheat. 738 (6 L. Ed. 204), that jurist held that the state is not a party unless it is actually sued in its own name. In *Poindexter v. Greenhow,* 114 U. S. 270 (5. S. Ct. 903, 29 L. Ed. 185), doubt was cast upon the efficacy of that test and it was finally abandoned by the United States supreme court in *In Re Ayers,* 123 U. S. 443 (8 S. Ct. 164, 31 L. Ed. 216). No court today employs the test suggested by Chief Justice Marshall. Hence, the absence of the state's name among the parties sued is not conclusive evidence that the immunity is unavailable. Before analyzing further the quoted excerpt taken from the Butterfield case we shall consider another decision relied upon by the plaintiffs; it is *Sloan Shipyards Corp. v. U. S. Shipping Board,* 258 U. S. 549 (42 S. Ct. 386, 66 L. Ed. 762). The shipping act enacted by congress established the United States shipping board and granted to it power to organize a corporation whose business would be the operation of merchant vessels. The act provided that the contemplated corporation should have a capital stock not exceeding $50,000,000 and authorized the board to purchase not less than a majority of it. However, upon the formation of this corporation the federal government became the sole owner of its capital stock. In the case just mentioned the court held that this corporation did not possess immunity from suit. It will be observed that in the case now under review as in the Butterfield case the fund out of which payment would be made of a judgment recovered against the agency was somewhat distantly removed from the general assets of the sovereign. In both cases the agency was a corporation with a fund of its own out of which judgment could be

paid. The case of *Hopkins v. Clemson College*, 221 U. S. 636 (55 L. Ed. 890, 31 S. Ct. 654, 35 L. R. A. (N. S.) 243), possesses the same feature. Clemson Agricultural college was a public corporation governed by a board of trustees, and possessed of power to sue and to be sued; it had authority to receive and to hold property, likewise to disburse money. It received annually an appropriation from the state which constituted substantially all of its income. Upon a tract of real property, the title of which was vested in the name of the college it wrongfully built a dike which caused the property of the plaintiff upon the other side of the river to become submerged. He thereupon instituted a suit which prayed that the dike be abated and that he be granted judgment for the damage inflicted. Since an agent is always liable for torts committed by himself, and since the college did not build the dike in its governmental capacity, the court refused to abate the demand against the college arising out of the tortious flooding of the plaintiff's land; the sovereign's immunity is never available to the agency in an action founded upon the agency's tort. But since the dike was built upon land owned by the state the court reasoned that it also belonged to the state, and that hence a decree could not be granted for its removal in the absence of the state. We believe that the inference can be fairly drawn from the decision that the court did not believe that execution could be levied upon the land owned by the state to satisfy the judgment; the record satisfied the court that the college possessed an income from bonds, private bequests, etc., in addition to the receipts from the state which could satisfy the judgment against the agency. Thus this is also a case where the agency possessed a fund of its own independent of the common assets of the state.

In *Rolston v. Missouri Fund Com.*, 120 U. S. 390 (30 L. Ed. 721, 7 S. Ct. 599), the facts were that the state of Missouri as a loan of its credit issued to the Hannibal and St. Joseph Railroad company $3,000,000 of its bonds redeemable part at the end of 20 years and part at the end of 30 years; the acceptance of the bonds by the company, under the terms of the legislation, operated as a mortgage of the railroad property to secure payment of the bonds. The transaction made the company liable to the state and the state to the owners of the bonds. The issuance of these bonds was followed with various legislation, including an act to enable the railroad company to relieve the state of its liability under this bond issue by making payment to the state either with cash of by surrendering other bonds of the state. Some years after the passage of the refunding act and before the railroad bonds were callable the railroad company paid to the state treasurer $3,000,000 plus the instalment of interest then due, and demanded an assignment of the liens which subjected the railroad property to the payment of the bonds. The state officials declined to make the assignments, arguing that since the bonds were not callable their holders would still be entitled to receive from the state interest for many years to come. When the railroad company refused to make provision for these future instalments of interest the state officials threatened to sell the railroad property and thereupon the railroad instituted suit against the state officials to compel them to assign the liens. The act specifically provided for an assignment of these liens upon payment of the bond indebtedness. The only issue presented by the suit was whether the refunding act contemplated that payment of the principal, together with

current interest, would entitle the railroad to an assignment of the liens or whether it was necessary for the company to completely relieve the state of its liability by making provision for future instalments of interest. After the court had made a comprehensive review of the aforementioned legislation, which satisfied it that the state had fully declared its will and had directed the state officials to surrender the liens upon complete discharge of the railroad's debt to the state, it held that the suit could be maintained; we quote from the decision as follows:

"* * * Here the suit is to get a state officer to do what a statute requires of him. The litigation is with the officer, not the state. The law makes it his duty to assign the liens in question to the trustees when they make a certain payment. The trustees claim they have made this payment. The officer says they have not, and there is no controversy about his duty if they have. The only inquiry is, therefore, as to the fact of a payment according to the requirements of the law. If it has been made, the trustees are entitled to their decree. If it has not, a decree in their favor, as the case now stands, must be denied; but as the parties are all before the court, and the suit is in equity, it may be retained so as to determine what the trustees must do in order to fulfill the law, and under what circumstances the governor can be compelled to execute the assignment which has been provided for."

We shall bring to a close our review of the cases relied upon by the plaintiffs by adverting briefly to a recent decision of the federal district court for this district which the plaintiffs believe especially sustains their position: *Warren Bros. Co. v. Kibbe,* 43 Fed. (2d) 582. The facts of that case were that the highway commission of our state entered into a contract with a firm of road builders whereby the latter undertook to pave

a section of state highways with a specified kind of pavement. The contract provided that if it should develop that any one was entitled to a patent upon that type of pavement the state and not the contractor should pay the royalty. Our statutes make the provision for the insertion of such stipulation in road paving contracts. Subsequently the Warren Construction company in litigation defended by the attorney general established a patent upon the pavement laid by the contractor. When the commission still refused to pay the royalties due to the patentee the latter brought an action against the commission to recover the sum payable. Instead of discharging the debt the commission claimed the sovereign's immunity from suit. The decision relied upon by the plaintiffs held that that privilege was unavailable for two reasons: (a) when the commission in disobedience of the statutes of the state declined to make payment of the royalties it did not stand for the state; and (b) implied consent on the part of the state to the institution of the suit. In explanation of the first ground it should be added that the court found that the statutes of this state, which authorized the commission to free the contractor from liability for payment of royalties upon patented pavements, charged the state with their payment when the patentee had established his patent. The decision declared "the state has thus spoken through its laws, and the highway commission, in disobedience thereof, does not stand for the state within the rule giving it immunity from suit." We quote further from the decision: "An action or suit may be maintained against a state agency to compel it to perform a plain, official duty which the law imposes upon it and a contract which it has entered into in pursuance of the law." The same principle is

very clearly expressed in the following much quoted language taken from *Poindexter v. Greenhow,* 114 U. S. 270:

"A defendant, sued as a wrongdoer, who seeks to substitute the state in his place, or to justify by the authority of the state, or to defend on the ground that the state has adopted his act and exonerated him, cannot rest on the bare assertion of his defense. He is bound to establish it. The state is a political corporate body, can act only through agents, and can command only by laws. It is necessary, therefore, for such a defendant, in order to complete his defense, to produce a law of the state which constitutes his commission as its agent, and a warrant for his act."

The same thought was tersely expressed in *Dunn v. University of Oregon,* supra, thus:

"An agent of the state, whether incorporated or not, by virtue of his character simply, possesses no such immunity from being sued. He must show, in his defense to an action or suit for interfering with private rights, that he proceeded within the authority conferred by a valid law, or his defense must fail."

In all of the preceding cases the defendant was a state agency and the court held that the suit could be maintained. In the Rolston case no judgment for money was sought against the state; the sole question was whether the railroad company had satisfied the requirements of a statute, which authorized the refunding of a debt, and had thus become entitled to a return of some liens. That case merely applied the rule that where one seeks to compel an official to perform a duty required by statute the state's immunity from suit is not available. The paving case was another application of the same rule. In the Butterfield case the question was whether the state in its own name could appeal from a judgment against its

agency. The decision held that the agency was itself an entity possessed of a fund of its own and that it, and not the state, was the proper appellant. The Butterfield case, the Clemson College case and the Sloan case seem to indicate that the sovereign's immunity from suit is not available to an agency which is itself an entity possessed of a fund out of which judgment can be paid provided the fund is somewhat remotely removed from the general assets of the state available for the discharge of its common debts. The paving case, the Poindexter case and the Rolston case hold that the agency cannot establish a contention that the suit is in effect against the state when it appears that the agency in its attempted defense is assuming an attitude hostile to the state's will as manifested by the laws enacted by the legislature; in other words, when the sovereign has declared its will through specific legislation the court can compel the agency to perform the required act. Since this suit does not attempt to try the title to real property *Dunn v. State University,* supra, has no application. Before attempting further to deduce from the decisions a general rule or to apply the aforementioned rules to the facts of this case we shall review a few of the cases to which the defendants have called our attention and some others. *Hampton v. State Board of Education,* 90 Fla. 88 (105 So. 323, 42 A. L. R. 1456), was a suit brought against the state board of education, a corporation, and the state officers who composed it to compel specific performance of a contract made by the board, whereby it undertook to sell to the purchaser all of the state school lands. The title to the property was not in the state officers, but they possessed statutory authority to sell the property. A demurrer to the

complaint was sustained and the plaintiffs appealed. After holding that the statutory authority to take possession of, to manage, to fix the terms of sale, and to convey the title to school lands was nothing more than "a mere power of agency to sell the lands" the court held that a suit against the state officers to enforce this contract was in effect a suit against the state, and that since the state had not authorized the suit to be brought against it the lower court properly sustained the demurrer.

In *Smith v. Reeves,* 178 U. S. 436 (20 S. Ct. 919, 44 L. Ed. 1140), the receiver of a railroad company sought judgment against the defendant "as treasurer of the state of California" for the sum of $2,272.80, the amount of taxes erroneously paid by the railroad company. The statute provided "Any corporation * * * dissatisfied with the assessment made by the board, upon the payment of the taxes due upon the assessment * * * may * * * bring an action against the state treasurer * * * ." We quote from the decision:

"Is this suit to be regarded as one against the state of California? The adjudged cases permit only one answer to this question. Although the state, as such, is not made a party defendant, the suit is against one of its officers as treasurer, the relief sought is a judgment against that officer in his official capacity; and that judgment would compel him to pay out of the public funds of the treasury of the state a certain sum of money. Such a judgment would have the same effect as if it were rendered directly against the state for the amount specified in the complaint * * *. We are clearly of opinion that within the meaning of the constitutional provision relating to actions instituted by private persons against a state, this suit, though in form against an officer of the state is against the state itself."

The court pointed out: "In the present case the action is not to recover special moneys in the hands of the state treasurer." The provision of the statute authorizing an action against the treasurer the court held would not justify an action in the federal courts. In *Ex parte v. State of New York,* No. 1, 256 U. S. 490 (41 S. Ct. 588) 65 L. Ed. 1057), the libelants instituted three libels in rem against tow boats. At the time of the disasters out of which the claims arose the tugs were under charter to the superintendent of public works of New York. The attorney general of New York suggested that the federal district court was without jurisdiction on the ground that the proceeding was really against the state. After the court denied the actions to dismiss the federal supreme court stayed the proceeding by a writ of prohibition. It pointed out that any judgment recovered "would expend itself upon the people of the state of New York in their public and corporate capacity.  *  *  *  In the fullest sense, therefore, the proceedings are shown by the entire record to be in their nature and effect suits brought by individuals against the state of New York,  *  *  *." In *Sherman v. Cage,* (Tex.) 279 S. W. 508, a group of taxpayers instituted a suit against the highway commissioners and a firm of contractors to cancel a highway construction contract and to recover money paid to the contractors on the ground of fraud. The court held: "It is well settled that a suit against any agency or department of the state, seeking the enforcement of a contract which it was authorized to make for the state, is a suit against the state, which cannot be maintained without the consent of the state, granted by the Legislature." It was held that the reverse of that proposition was likewise true and that accordingly without the state's consent

the suit for the cancelation of the contract could not be maintained. In *State Highway Com. v. Utah Const. Co.,* 278 U. S. 194 (49 S. Ct. 104, 73 L. Ed. 262), it appeared that the state highway commission of Wyoming and the Utah Construction company, a corporation, had executed a contract whereby the latter undertook to construct for the former a roadway. Subsequently the construction company brought an action against the highway commission seeking damages for an alleged breach of the aforementioned agreement. The District Court held that the action was in effect against the state; the Circuit Court of Appeals reached the contrary result. The federal Supreme Court, in reversing the Circuit Court of Appeals, expressed itself thus:

"It seems to us sufficiently clear that the suit is, in effect, against the state of Wyoming. The contract for the construction of the work in question was between the Utah Construction company and the state. The state acting through the highway commission, as it might through any officer, became a party to the original agreement and obligated herself thereby. Neither the commission nor any of its members assumed any direct or personal responsibility. The supplemental agreement was not intended to impose liability where there was none before. Its purpose, considering the changed circumstances, was to modify in the ways specified what the original parties had undertaken to do. The commission was but the arm or alter ego of the state, with no funds or ability to respond in damages. There is no claim that the members of the commission are personally liable."

*Miller Supply Co. v. State Board of Control,* 72 W. Va. 524 (78 S. E. 672), was an action against the State Board of Control to recover a judgment for the value of some merchandise supplied to one of the state institutions upon the alleged order of the board. The court

held that the lower court properly sustained a demurrer to the complaint; it pointed out:

"* * * The state board of control is a direct governmental agency of the state. True, the statute creating that board made it a corporation. But still as such corporation it is only a state governmental agency. When it acts, it acts for the state in the administration of state affairs. Its contracts are the contracts of the state. Further true, the statute says it may sue and be sued. It may be that by appropriate process some mere ministerial duty of the board may be controlled. This we do not decide for the question is not now before us. Certain it is, no contract or property right of the state can be brought into litigation in the courts by a suit against that board. The state has a direct, immediate, and total interest in every valid contract made by the State Board of Control, and in truth and in substance any suit on a contract with that board is a suit against the state."

In *State ex rel. v. State Board of Control,* 85 W. Va. 739 (102 S. E. 688), the relator applied for a writ of mandamus to compel the state board of control and the warden of the penitentiary to deliver to him a number of convicts pursuant to the provisions of the contract. The court, in denying relief, employed the following test of immunity which it declared has been adopted by the federal Supreme Court as follows: "If the suit be one in which the state is vitally interested and will have to satisfy the judgment or decree of the court, if satisfaction is made at all, then the suit is one against the state, within the meaning of the eleventh amendment to the constitution of the United States, even though the suit nominally is one against the state's officers or agents." In *Salem Mills Co. v. Lord,* 42 Or. 82 (69 P. 1033, 70 P. 832), it appeared that Mill creek, after flowing through land owned by the state, flowed through the property of the plain-

tiffs; that the defendants, who were state officials were making an unauthorized use of the waters of the stream to the injury of the plaintiff. The latter sought an injunction restraining the defendants from continuing their improper appropriation of the waters of the creek. Among other defenses urged by the defendant was the contention that the suit was in effect against the state. In passing upon this defense the decision pointed out:

"Latterly, it has become the settled rule that the parties named upon the record will not be deemed as a controlling feature by which to determine whether the suit or action will lie, when the jurisdiction of the court is questioned on account of the relief demanded being in reality against the state. The court will look behind and through the nominal parties to the record, and ascertain if possible who are the real parties to the controversy, and will be governed accordingly; and if it appeared that the state, and not the individuals named on the record, is to be affected, it will stay its hand, and in no event, if it appear that the state is an indispensable party, will the relief be granted unless it submits to the jurisdiction. * * *

"If the things which it is sought by the suit to require the defendants to do are things which when done and performed constitute a performance by the state of the contract alleged to be controlling in the premises, the suit would be to all intents and purposes one against the state, though nominally against persons who are its officers, as a performance on the part of the officers would be in pursuance of the public duty enjoined upon them, and hence an act of the state itself through its functionaries."

Since the record did not indicate that the state was an indispensable party without whose presence relief could not be granted, the decision held that the circuit court would not have been justified in dismissing the

suit upon the suggestion of the officials that the proceeding was in effect against the state. An examination of the evidence showed that the defendants were taking from the stream quantities of water beyond that justified by the state's rights, and that hence their conduct was unjustifiable; relief was granted against them as individuals. In *Mohler v. Fish Com.*, 129 Or. 302 (276 P. 691), the plaintiff sought to recover the rental value of his premises which the state, through the instrumentality of its fish commission, had used for fish cultural purposes. In holding that the immunity of the state in the suit was available to the fish commission, its agency, Mr. Justice BELT on behalf of this court pointed out:

"The fish commission is a mere agency of the state in the nature of a quasi-public corporation created by legislative enactment with certain delegated powers. It has never had any authority to appropriate private property for public use. While the fish commission is named as a party defendant, we are of opinion that the action is, to all intents and purposes, against the state. If judgment were obtained against the fish commission, it would, in reality, be a judgment against the state."

By way of summary it is to be noticed that in *Smith v. Reeves* where the judgment sought against the official "as treasurer of the state of California" would take $2,272.80 out of the state treasury, the court held that the immunity was available because the action was in effect against the state. In *Ex parte v. State of New York No. 1,* the conclusion was the same; there the official who was the defendant had charge of the repair and navigation of the canals under authority conferred both by the constitution and the statutes of his state. In order to facilitate the discharge of his

duties the state had appropriated the sum of $200,000, yet since the judgment sought would expend itself upon the state the federal Supreme Court held that the action was in effect against the state and hence the immunity was available. *Sherman v. Cage* and *State Highway Com. v. Utah Const. Co.* were both directly concerned with highway construction contract cases; in the first of these the plaintiff, a taxpayer, sought a decree to cancel the contract and in the second the contractor sought damages for an alleged breach of the contract. In each instance the highway commissioners were the parties defendant. Since in both cases the officers represented the state both in action and liability the courts held that the proceedings were in effect against the state and hence could not be maintained. In *Miller Supply Co. v. Board of Control* the result was the same; there the plaintiff sought a judgment representing the value of merchandise supplied to a state institution. It is evident that in such an instance the state has a valuable interest in the contract upon which the action is based. The same was true in *State v. State Board of Control* where the plaintiff sought performance of a contract concerning convict labor. In *Mohler v. Fish Commission* the sovereign's immunity was held to preclude the maintenance of an action to recover a judgment for rent, representing the reasonable rental value of property occupied by the state; it is evident that the judgment would have expended itself against the state.

The authorities above reviewed as well as many others cited in the briefs we believe support the following statement taken from 25 R. C. L.:

"* * * Suits against officers of a state as representing the state in action and liability, where the state, although not a party to the record, is the real

party against which relief is sought, and where a judgment for the plaintiff, although nominally against the defendant as an individual, could operate to control the action of the state or subject it to liability, are suits against the state. The rule does not, however, afford immunity to an officer * * * where suit is instituted against him to compel performance of a duty required of him by statute. * * *''

The same thought is thus expressed in 36 Cyc., p. 916:

''* * * It seems that the rule which forbids a suit against state officers because in effect a suit against the state applies only where the interest of the state is through some contract or property right, and it is not enough that the state should have a mere interest in the vindication of its laws, or in their enforcement as affecting the public at large or the rights of individuals or corporations; it must be an interest of value in a material sense to the state as a distinct entity. Thus a suit against the governor of a state, not by name but solely in his official character, is a suit against the state, so also is a suit against state officers for the purpose of enforcing through them the performance of the contracts of the state, or to compel them to do acts which would impose contractual liabilities upon the state.''

Reverting to a consideration of this suit it is clear that its sole purpose is to adjudicate an indebtedness in favor of the plaintiffs and against the state. The alleged debt arises out of a contract to which the state and not the defendant is a party. That contract is the property of the state and it is vitally concerned in its interpretation and the performance of its obligations. If the debt, which the plaintiffs allege, is established by a court's decree it will thereby have been determined that the state has not performed the covenants of its contract, and that the contract will remain

executory until the state has paid the debt. The funds out of which the plaintiffs seek payment belong to the state and are in the possession of its treasurer. No corporate entity of any character, like the industrial accident commission, Clemson college, or the emergency fleet corporation separates the state from the exercise of direct dominion over these funds. The money out of which payment is sought has been gathered from the taxpayers and property owners of the state for governmental purposes, to wit: the construction and maintenance of state highways. Instead of the effect of the decree upon the state being merely coincidental it will be direct, substantial and exclusive; it will expend its entire self upon the state. When the state has been somehow coerced into compliance with the decree it will then have performed its contract provided a debt is actually due from the state. These being the circumstances it seems manifest that this suit cannot be maintained unless the state is a party to it. If the state is somehow before us through the personage of the highway commission then it is equally evident that the suit cannot be maintained because immunity has been claimed on behalf of the state; that is, we must hold that the motion to dismiss should have been granted. The above conclusions are warranted unless the suit is within the exception of the general rule mentioned in the above excerpt taken from Ruling Case Law and illustrated by *Poindexter v. Greenhow,* supra, and *Rolston v. Crittenden,* 120 U. S. 390, or is authorized by Or. L., § 362, previously quoted.

The question of whether the highway commission is a corporation, which is argued at length in the briefs, we have deemed a matter of little consequence in this suit. At the time when this transaction took place the

commission possessed no power to sue or to be sued, and the nature of its entity could not have affected in any material manner the duties exacted of the defendants. The state, being itself non personal, must always act through agencies; whether these are individuals or corporate bodies is ordinarily a matter of little significance in a suit of this character.

■ While we believe that the foregoing conclusions are determinative of this entire controversy, except the application of Or. L., § 362, nevertheless we shall express briefly our disposition of the contention that the prosecution of this suit is warranted by the exception to the general rule which permits the maintenance of suits against officials to compel their performance of duties required of them by statutes; the plaintiffs add to the exception, "or by a contract." We have found no case which warrants the amendment suggested by them. It is true that in the paving case the decision declared "an action or suit may be maintained against a state agency to compel it to perform a plain, official duty which the law imposes upon it and a contract which it has entered into in pursuance of the law;" but in that case the statute not only directed the highway commission what action to take in regard to the payment of royalties on pavements but also authorized the commission to relieve contractors from the payment of royalties. Thus not only the contract but also the state, through the mandate of its legislation, directed the commission to pay the royalties for which the plaintiffs sought judgment. While the reasons are manifest which justify the maintenance of suits against officials to compel their performance of duties exacted by statute we do not believe that those reasons warrant the maintenance of suits

against officials in their representative capacity to compel performance of duties imposed by contract only. In such instances the official and not the state has prescribed the duty which the suit seeks to enforce at the expense of the state. None of the cases upon which the plaintiffs rely warrant the amendment to the exception which the plaintiffs propose. Moreover, the defendants have neglected no duty imposed upon them by the contract. The latter does not require that the commission should make the final estimate nor perform the duties of an umpire. Next it will be observed that the rule is invariably expressed in terms of the enforcement of a duty required "by statute." The plaintiffs have called to our attention no portion of the highway code which exacts of the commission the duties of an umpire, or of setting aside the final estimate of the engineer, and we have found none. The authority of the highway commission is purely statutory; one of our recent decisions referred to the commission as "a board of special and limited powers": *State v. U. S. F. & G. Co.*, 125 Or. 13 (265 P. 775). Since the commission has no express authority to set aside the engineer's award the question occurs whether such power has been conferred impliedly. The commission is not a judicial body. While the engineer was compiling his award he was not a mere employee of the commission but was invested by both parties with all of the authority and duties of an arbitrator; he was bound to be impartial as to both parties and to reach a result that was fair. It is true that his salary as umpire came from the state, but so also do all salaries paid to our judges. While the engineer was not a judicial officer of the state, nevertheless the commission had no greater powers to revise his

decisions than it possessed over the conclusions of a judicial officer. The very purpose of the provision of the contract, which delegated to the engineer the powers of an arbitrator, authorized him to compile the final estimate, and stipulated that "his estimates and decisions shall be final and conclusive and binding on both parties, including the commission." Under these circumstances we do not believe that the commission owed a duty to investigate the engineer's award upon the complaint of the plaintiffs, nor to undertake to make a new compilation of the work performed by the plaintiffs. They were as powerless to set aside the award as were the plaintiffs. As a matter of fact the engineer ordered that an informal hearing should be held upon the merits of the plaintiffs' criticisms when he was informed that they were dissatisfied with his award. The result did not alter his final estimate. These being our conclusions it follows that this suit cannot be predicated upon any theory that the plaintiffs are seeking to compel the defendants to perform a duty exacted of them by any statute or by the law.

We do not believe that Or. L., § 362, warrants the maintenance of this suit. That section of our law, together with §§ 357 to 363, was enacted in 1862, yet it has never been construed in any decision of this court. Its attempted application to the facts in *Mohler v. Fish Commission,* supra, was rejected on the ground that the officials who were the defendants in that suit were not in office at the time when the transaction of which complaint was made occurred. In our present case only one of the three commissioners who executed the contract on behalf of the state remains a commissioner at this time. If a judgment is rendered against

the two, whose terms of office have expired, and if the judgment is enforced against them personally as § 362 provides, we fail to understand how "the amount thereof" can be allowed to them in their "official accounts." Since well established constitutional pro-provisions prohibit the application of one man's property for the satisfaction of another's debt it seems impossible to construe § 362 in a manner which will avoid conflict with plain constitutional inhibitions. This section of our laws seems to contemplate that the officer may be sued in his official capacity, and that the resulting judgment shall be enforced against him personally. The section concludes with the provision that the official may secure recompense in his "official accounts." Thus through judicial process his personal estate would be seized in order that a judgment in effect against the state might be satisfied. In order to obtain redress he would be compelled to look to his "official accounts." The two of these three defendants, whose terms of office have expired, no longer have access to an official account and the third defendant possesses no exclusive control over the highway fund. The statute construed in *Commissioners v. Martin,* 4 Mich. 557 (69 Am. Dec. 333) and *Johr v. Supervisors of St. Clair,* 38 Mich. 532, made no provision for the enforcement of the judgment against the official's personal fortune; the proceeding was merely a means whereby an open claim could be liquidated. We have already mentioned a manifest error present in § 362. A study of § 357 to § 363 discloses an ambiguity; it arises from the fact that while §§ 357 to 363 refer to "any county, incorporated town, school district, or other public corporation of like character," and § 362 makes provision for actions upon "any of the causes specified in

§§ 357 and 358'' thereby limiting by inference the application of § 362 to the corporate bodies mentioned in §§ 357 and 358, yet § 362 refers to all public officers. Thus § 362 is the only one of these six sections which mentions ''All public officers,'' and its mention of them is accompanied by language which possibly confines the meaning of these three words to officials of the corporate bodies described in the preceding five sections. Such a construction does not appeal to our reason, yet it is no more unreasonable than a proposal to apply the official's property in satisfaction of the state's debt. We have endeavored earnestly to find for § 362 a construction which will render it useful and harmonious with constitutional provisions, but without success. We conclude that it does not warrant the maintenance of this suit.

The above being our conclusions it follows that the decree of the circuit court is reversed. The cause will be remanded to that court with instructions to dismiss. Costs to neither party.

Coshow, C. J., concurs in result.

Rand, J., concurs.